IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**Marianne R. T.,**

   **Plaintiff,**

  v.                  CIV No. 1:23-CV-00216-KRS

**MARTIN O'MALLEY,[1] Acting Commissioner,**
**Social Security Administration,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Marianne R. T's ("Plaintiff") Motion to Reverse and Remand for Rehearing with Supporting Memorandum ("Motion") (Doc. 18), dated August 17, 2023, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. The Commissioner responded to Plaintiff's Motion on November 15, 2023, (Doc. 24), and Plaintiff filed a Notice of Completion of Briefing (Doc. 26). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore **GRANT** Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

/ / /

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

I.      **PROCEDURAL POSTURE**

On July 5, 2018, Plaintiff filed an initial application for DIB with an alleged onset date of January 1, 2017, at 56 years of age. (*See* Administrative Record ("AR") at 35–36).[2] Plaintiff alleged she was disabled due to an overactive bladder, chronic bilateral knee pain, right shoulder pain, and degenerative disc disease. (*Id.* 36–37). In Plaintiff's August 20, 2018, Adult Function Report, she reported that she cannot stand or sit for an extended amount of time, climb stairs, lift more than 20 pounds, or bend over, and has shortness of breath as well as drowsiness due to her medications. (*Id.* at 322). She further reported that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, and complete tasks. (*Id.* at 327). Plaintiff's date last insured, the date through which she could be eligible to receive disability insurance benefits was December 31, 2021. (*Id.* at 36).

Plaintiff's application was denied at the initial level on February 27, 2019 (*id.* at 36–50), and upon reconsideration on June 21, 2019 (*id.* at 51–68). Plaintiff requested a hearing on July 11, 2019, (*id.* at 103–04), which ALJ Jennifer M. Fellabaum ("ALJ Fellabaum" or the "ALJ") conducted on March 4, 2020, (*id.* at 9–34). Plaintiff was represented by counsel and testified at the hearing (*id.* at 9–25), as did vocational expert Leslie White (*id.* at 25–31). On April 7, 2020, the ALJ issued an unfavorable decision. (AR 70–91). On May 15, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* 1–3).

/ / /

---

[2] Document 12 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, Plaintiff's Application Summary for DIB is dated August 20, 2018. (AR at 161). However, Plaintiff's Disability Determination and Transmittal states Plaintiff completed her application for DIB on July 5, 2018. (AR at 35–36). The Court utilizes July 5, 2018, as the respective date for purposes of this Memorandum, Opinion, and Order.

On July 11, 2020, Plaintiff appealed to the United States District Court for the District of New Mexico. (*Id.* at 1544–48). On July 1, 2021, United States Magistrate Judge Kirtan Khalsa reversed and remanded the case finding the ALJ did not adequately explain why she discounted moderate mental limitations in an opinion from consultative examiner David LaCourt, Ph.D. (*Id.* at 1549–73). On March 3, 2022, the Appeals Council remanded Plaintiff's case to ALJ Fellabaum for a second hearing. (*Id.* at 1509–10, 1575–79).

On October 18, 2022, the ALJ conducted a remand hearing. (*Id.* at 1506–37). Plaintiff was represented by counsel and testified at the hearing (*Id.* at 1508–30), as did vocational expert Wilfred Roux (*id.* at 1530–37). On November 15, 2022, the ALJ issued an unfavorable decision. (AR 1474–1505). The ALJ's decision became the final decision for review because the Appeals Council did not assume jurisdiction.[3] 20 C.F.R. § 404.984. On March 14, 2023, Plaintiff filed her Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.   LEGAL STANDARDS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation

---

[3] This Court has jurisdiction under 42 U.S.C. § 405(g).

omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

**B.     Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") devised a five-step sequential evaluation process to determine disability.

4

*See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a

*prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.   THE ALJ'S DETERMINATION

On November 15, 2022, the ALJ Fellabaum issued a decision denying Plaintiff's application for DIB. (AR 1477–94). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (*Id.* at 1479–93). First, ALJ Fellabaum found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of January 1, 2017. (*Id.* at 1479). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: "bilateral knee osteoarthritis and meniscal tears, status post arthroscopic repair; bilateral hip osteoarthritis; right shoulder degenerative joint disease; degenerative disc disease; bilateral carpal tunnel syndrome, status post median nerve decompression; left ankle fracture (as of September 2019); and left plantar fasciitis (as of December 2020)." (*Id.*). ALJ Fellabaum further found that Plaintiff had the following non-severe impairments: "depression, anxiety, somatoform disorder, alcohol use disorder, type II diabetes mellitus, obesity, cataracts, hemorrhoids, diverticulosis, irritable bowel syndrome, hypothyroidism, obstructive sleep apnea, and urinary incontinence . . ." (*Id.* at 1480). The ALJ reasoned that the foregoing conditions either had a minimal impact, Plaintiff responded well to treatment, or the condition did not exist continuously for a year. *Id.* Thus, whether considered separately or in a combination with other impairments, the impairments were not severe. *Id.* At step three, ALJ Fellabaum concluded that Plaintiff did not have an impairment or combination of

impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 1483).

Moving to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 1480–92). Having done so, the ALJ concluded that for the relevant period, Plaintiff possessed an RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights, hazardous machinery, or concentrated exposure to extreme cold; can occasionally reach overhead and frequently reach in other directions bilaterally; can frequently finger, handle, and feel bilaterally; can occasionally use foot controls bilaterally; and cannot perform fast paced assembly line work (due to pain, not mental impairments).

(*Id.* at 1483).

At step four, the ALJ found Plaintiff's past work as a Dispatcher was not precluded by her RFC. (*Id.* at 1493). Hence, the ALJ was not required to proceed to step five. *See Thomas*, 540 U.S. at 24–25. ALJ Fellabaum thus concluded Plaintiff was not disabled at any time from January 1, 2017, through the date last insured, December 31, 2021. (*Id.*).

## IV.   DISCUSSION

Plaintiff asserts that ALJ Fellabaum failed to properly assess the medical evidence in regard to the supportability and consistency factors for (1) consultative examiner, David LaCourt, Ph.D. ("Dr. LaCourt"), (2) Veterans Affair ("VA") psychological evaluator, Theresa Salazar, PsyD (Dr. Salazar"), (3) psychological evaluator, Robert Krueger, Ph.D. ("Dr. Krueger"), (4) nurse practitioner Theresa Stenmark, FNP-BC ("NP Stenmark"). (Doc. 18 at 6–9, 10–18, 19–23). Specifically, Plaintiff contends the ALJ cherrypicked medical evidence, daily activities, and Plaintiff's subjective statements to support her RFC. Thus, ALJ Fellabaum's analyses of the

supportability and consistency factors were not supported by substantial evidence. Plaintiff further asserts the ALJ failed to adequately discuss 20 C.F.R. § 404.1520c(c)(3)–(c)(4) in relation to Dr. LaCourt, Dr. Krueger, and NP Stenmark. *See id.* at 9–10 (Dr. LaCourt), 18–19 (Dr. Krueger), 23–24 (NP Stenmark). Plaintiff also claims that as a result of the aforementioned errors ALJ Fellabaum erroneously concluded that her depression, anxiety, and urinary incontinence were nonsevere impairments. *Id.* at 24–27. The Court agrees that ALJ Fellabaum failed to properly assess Dr. Salazar's opinion and, without reaching the other claims of error, remands on that basis.

    **A.**    **Dr. Salazar**

Plaintiff contends that the ALJ failed to properly assess the opinion of VA psychological evaluator, Dr. Salazar. (Doc. 18 at 19–20).

    *1.*    *Dr. Salazar's Opinion*

On November 26, 2018, Dr. Salazar completed a "Medical Opinion[:] Disability Benefits Questionnaire" for the United States Department of Veterans Affairs to evaluate "whether [Plaintiff's] medical records support that the claimed depressive disorder, is/are at least as likely as not (50 percent or greater probability) proximately due to or the result of [Plaintiff's] service connected disabilities[.]" (AR 1359–60, 1362 (capitalization omitted)). Dr. Salazar conducted an in-person examination and administered the Posttraumatic Checklist (PCL-5 interview format), BDI-II (interview format), WHOADAS 2.0, and DSM-5 self-rated level 1 cross-cutting symptom measure. (*Id.* at 1359). Dr. Salazar further reviewed Plaintiff's psychosocial history; VA electronic claims file, including the DD Form 214 (Honorable Discharge from Active Duty) and service treatment records; and conducted a clinical interview. (*Id.*).

In response to the prompt, "[i]f the Veteran currently has one or more mental disorders that conform to DSM-5 criteria, provide all diagnoses[,]" Dr. Salazar listed "Depressive disorder due

8

to another medical condition, [w]ith major depressive-like episode" and moderate alcohol use disorder. (AR 1364). Dr. Salazar concluded that Plaintiff's depressive disorder was "secondary to service connected medical conditions[.]" (*Id.*). She further indicated that Plaintiff's mental disorders caused "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood[.]" (*Id.* at 1365). Under "Relevant Mental Health history[,]" Dr. Salazar noted that,

> [r]ecords from PHS 7/3/12 document diagnoses of Unspecified Depressive Disorder by her PCP with [prescription] of Effexor for Depression. She discontinued psychotropic medication due to negative side effects. She is prescribed multiple pain medications including [baclofen] and gabapentin for depression, pain as well as sleep disturbance. She suffers from multiple medical conditions and chronic pain rated at pain scale average of 8/10 which worsen her depression. Denied any history of formal mental health treatment.

(AR 1367). She noted that Ms. Thompson's test results:

> all document moderate to severe levels of difficulty in the veterans [sic] symptoms on his [sic] personal, social and occupational functioning. [A]ctivities of daily living intact; however[,] veteran endorsed SEVERE difficulties in: joining community activities, walking long distances, dealing with people she doesn't know and maintaining friendships and how much she has been emotionally affected by problems.

(*Id.* at 1369 (capitalization in original)).

    2.    <u>Assessment</u>

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate Dr. Salazar's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). The revised regulation does not assign any specific evidentiary weight or deference to the medical opinions. *See* 20 C.F.R. § 404.1520c(a). The revised regulation also imposes certain "articulation requirements" on an ALJ in their evaluation of medical opinions. *See id*. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)[,]" the ALJ

9

need not articulate how she considered each individual medical opinion; rather, she need only "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis." *Id.* § 404.1520c(b)(1). Second, an ALJ must consider five factors when evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)–(5); however, she is generally only required to *articulate* her consideration of two of those factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Third and finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors . . . for those medical opinions[,]" including the source's relationship with their client, any specialization, and other factors that tend to support or contradict the medical opinion. *Id.* §§ 404.1520c(b)(3); 404.1520c(c)(3)–(5).

While the revised regulation allows the ALJ some discretion in *how* she articulates her findings on the persuasive value of medical opinion evidence, it provides no leeway as to *whether* she articulates such findings as to each opinion. *See id.* § 404.1520c(b) (providing that the ALJ "***will*** articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record") (emphasis added). In other words, while an ALJ generally "is not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009–10, the duty to address the persuasive value of *all* medical opinion evidence of record—at least at the source level—is mandatory. *See id.*

Even so, the new regulation does not alter the standard of review. Thus, an ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). As before, an ALJ must "consider all relevant evidence in the case record[,]" *Silva v Saul*, No. 19-913

10

WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

Plaintiff submits that the ALJ failed to adequately explain how she considered the supportability and consistency factors for Dr. Salazar's opinions as required by 20 C.F.R. § 404.1520c(b)(2). (Doc. 18 at 10–13). An ALJ must, at the very least, provide an *explanation* that allows the reviewing court to follow her reasoning and communicates how she considered the factors of consistency and supportability for each medical source's opinions. 20 C.F.R. § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the "explanation must at least '[e]schew[] rote analysis and conclusory explanations [and] discuss . . . the crucial factors in any determination with *sufficient specificity* to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ." *Frazer v. Kijakazi*, No. 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (quoting *Pamela P. v. Saul*, 3:19-CV-575 DJS, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020)) (emphasis added) (subsequent citations omitted).

In this matter, ALJ Fellabaum's entire discussion of Dr. Salazar's methodology and opinion is as follows:

> Dr. Salazar diagnosed depressive disorder and alcohol use disorder, and opined as to 'occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood[.]" Dr. Salazar's opinion is not persuasive. She did not provide specific work-related functional limitations. Moreover, her opinion is supported by lists of subjective symptoms but not by clinical findings. In addition, her opinion is inconsistent with the lack of ongoing mental complaints, lack of significantly abnormal mental status exams, and lack of consistent mental health treatment.

(AR at 1490). Ultimately, the Court agrees with Plaintiff that the ALJ's analysis of Dr. Salazar's

opinion fails to pass muster.

                a)      <u>Supportability Factor</u>

ALJ Fellabaum specified that she found Dr. Salazar's opinion "not persuasive" because her opinion lacks specific work-related functional limitations and clinical findings, and is based on subjective symptoms. (*Id.* at 1490). In other words, she found Dr. Salazar's opinion was not internally supported by her own examination findings. This conclusion, of course, bears upon the supportability factor, which considers how well a medical source supported her own opinions with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." (*Id.*).

Here, the ALJ failed to explicitly consider how Dr. Salazar supported or failed to support her own opinions with either objective medical evidence or supporting explanations. In formulating her opinion, Dr. Salazar conducted an in-person examination and administered the Posttraumatic Checklist (PCL-5 interview format), BDI-II (interview format), WHOADAS 2.0, and DSM-5 self-rated level 1 cross-cutting symptom measure. (AR at 1359). Dr. Salazar further reviewed Plaintiff's psychosocial history; VA electronic claims file, including the DD Form 214 (Honorable Discharge from Active Duty) and service treatment records; and conducted a clinical interview. (*Id.*). In her statement, Dr. Salazar opined Plaintiff suffered from "occupational and social impairment with deficiencies in . . . work . . . judgment . . . [and] thinking . . ." (*Id.* at 1365). Further, Plaintiff had "SEVERE difficulties in: joining community activities, walking long distances, dealing with people she doesn't know and maintaining friendships and how much she has been emotionally affected by problems." (*Id.* at 1369).

In the decision, ALJ Fellabaum did not specifically address how or why Dr. Salazar's opinions fell short of offering "specific work-related functional limitations." Nor does the ALJ explain why the evidence cited by Dr. Salazar does not qualify as clinical findings and are merely a recitation of Plaintiff's subjective symptoms. The ALJ merely cited one statement within the opinion and summarily concluded Dr. Salazar's methodology and findings were insufficient to find her opinion persuasive.

Perhaps the ALJ reached her conclusion because, as the Commissioner asserts, "Dr. Salazar did not provide an explanation of the clinical findings in these records [cited and reviewed by Dr. Salazar] that supported her opinion." Doc. 24 at 15–16. Maybe ALJ Fellabaum disregarded Dr. Salazar's opinion because she did not explain how severe difficulties in interacting with people Plaintiff does not know (*i.e.*, customers or new coworkers) could create deficiencies in work, judgment, and thinking. *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 905–06 (10th Cir. 2023) (citing 20 C.F.R. § 404.1545(a)(2)(ii)). The ALJ, however, did not say as much, and the Court cannot conjure such rational on the ALJ's behalf. Indeed, "[j]udicial review is limited to the reasons stated in the ALJ's decision . . . ." *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). To the extent that there may be legitimate reasons for discounting Dr. Salazar's opinion found within her own records, the ALJ simply failed to articulate with sufficient specificity those reasons.

What is more, while the ALJ detailed one line of Dr. Salazar's findings and opinion, she omitted Dr. Salazar's other relevant findings. For instance, Dr. Salazar's notes documented Plaintiff minimizes her depression, Plaintiff's depression waxes and wanes with her pain levels, Plaintiff was prescribed backlafyn and gabapentin for depression, pain, and sleep disturbance, Plaintiff's depression adversely affected her daily activities, and Plaintiff's judgment and thinking

13

were impacted by her depression. (*See* AR at 1359–1369). Dr. Salazar also noted that Plaintiff had difficulties working with co-workers and customers. (*Id.* at 1367).

For his part, the Commissioner maintains that ALJ Fellabaum reasonably found Dr. Salazar's opinions unpersuasive because Dr. Salazar's opinion (1) failed to explain how the clinical findings supported her opinions, (2) was not a "medical opinion" per the Code; and (3) was inconsistent with the record as a whole. (Doc. 24 at 15–17). Yet, the ALJ offered no such rationale in the context of her evaluation of Dr. Salazar's opinion. The Commissioner may not rationalize the ALJ's rejection of Dr. Salazar's opinion *post hoc* as this Court's review is limited to the four corners of the ALJ's decision. *See Carpenter*, 537 F.3d at 1267. Hence, the Court finds that the ALJ's discussion of the supportability factor failed to meet the articulation standard under 20 C.F.R. § 404.1520c(b).

b)  Consistency Factor

ALJ Fellabaum's consideration of the consistency factor is also problematic. This factor calls for a comparison between the subject medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*.

Here, the ALJ explained she discounted Dr. Salazar's opinion because it "is inconsistent with the lack of ongoing mental complaints, lack of significantly abnormal mental status exams, and lack of consistent mental health treatment." (AR at 1490). Careful review of the record, however, indicates Dr. Salazar's opinion is consistent with Dr. Krueger's and Dr. LaCourt's objective findings as well as Plaintiff's subjective statements. Dr. Krueger concluded Plaintiff minimized her depression based on subjective statements, objective observations and testing. (*Id.*

14

at 2153–55). Likewise, Dr. Krueger's and Dr. LaCourt's tests evidenced Plaintiff had difficulty with "working memory and processing speeds." (*Id.* at 1219, 2155–56). Finally, Plaintiff repeatedly testified that her depression affected her ability to interact with others on a regular basis, finish tasks, and concentrate, and her pain exacerbated her depression. (*Id.* at 18–20, 1520–21, 1524, 1528–29).

The Court acknowledges that ALJ Fellabaum discussed various medical opinions and evidence earlier in her decision. Notwithstanding, the ALJ failed to cite any specific evidence in formulating her findings as to the consistency, or inconsistency, of Dr. Salazar's opinion.[4] As such, it is not clear to the Court what evidence the ALJ is relying on from her discussion of the evidence elsewhere to determine that Dr. Salazar's opinion is not consistent with the record. Additionally, the Commissioner's attempt to fill in the evidentiary gap on behalf of the ALJ is improper. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (*quoting Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988)) ("It is well settled the administrative agencies must give reasons for their decisions."); *see also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). The Court thus concludes that the ALJ's articulation of his consistency analysis fails to suffice under 20 C.F.R. § 404.1520c.

### B.  Harmful Error Analysis

The Commissioner is adamant that no legal error occurred, but rather Plaintiff requests the Court reweigh the evidence. (Doc. 24 at 16–17). The Court disagrees.

---

[4] To the extent Plaintiff contends the ALJ was required to provide a contemporaneous discussion of medical evidence that she relied upon for discounting Dr. Salazar's opinion, the Court disagrees. It is well-established that a contemporaneous discussion is not mandatory when an ALJ previously discusses evidence and then later cites to that evidence when determining the persuasiveness of an opinion. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012).

The failure to adequately articulate the consistency and supportability factors only constitutes "harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (citation omitted). In such a case, the plaintiff is not prejudiced because the outcome would have remained the same even if the medical opinion was determined to be persuasive. *See id.* at 579. Here, had the ALJ found Dr. Salazar's opinion persuasive, she would have assigned Plaintiff a more restrictive mental RFC, which in turn would have resulted in different findings at steps four and five. The ALJ's failure to adequately explain her rejection of Dr. Salazar's opinion was not harmless. Remand is required for the proper consideration of Dr. Salazar's opinion pursuant to 20 C.F.R. § 404.1520c.

### C. Other Claims

Because a reevaluation of Dr. Salazar's opinions may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. CONCLUSION

The ALJ erred in her review of Plaintiff's application for DIB by failing to adequately evaluate medical opinion evidence in accordance with controlling legal standards. Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 18), is **GRANTED**, and the Court remands this case back to the Social Security Administration for proceedings consistent with this opinion.

          **KEVIN R. SWEAZEA**
          **UNITED STATES MAGISTRATE JUDGE**